UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**PETER GALE,**

                          **Plaintiff,**

               **-v-**                                   **5:12-CV-793**

**COMMISSIONER OF SOCIAL SECURITY,**

                          **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Olinsky Law Group
Howard D. Olinsky, Esq.
Tanisha T. Bramwell, Esq.
300 S. State Street
Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

Amanda J. Lockshin, Esq.
Jason P. Peck, Esq.
Special Assistant U.S. Attorneys
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Hon. Norman A. Mordue, Senior District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

On August 31, 2009, plaintiff filed applications for disability insurance benefits and supplemental security income ("SSI"), claiming disability beginning December 5, 2005. The applications were initially denied on November 25, 2009. Thereafter, plaintiff filed a written request for a hearing, and a hearing was held on January 4, 2011 before Administrative Law

Judge ("ALJ") Rosanne M. Dummer. On February 22, 2011, the ALJ issued a decision denying plaintiff's claim for benefits. (Tr. 12-30). The Appeals Council denied plaintiff's request for review. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, asking the court to reverse the Commissioner's decision to deny her application for disability benefits. Presently before the court are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 15). For the reasons set forth below, the court concludes that the Commissioner's decision should be affirmed and plaintiff's complaint dismissed.

## DISCUSSION

**A.    Legal Standard**

The Social Security Act authorizes payment of disability insurance benefits or SSI benefits to individuals with "disabilities." To be considered disabled, a plaintiff must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1832c(a)(3)(A). The Commissioner uses a five-step process to evaluate disability insurance and SSI disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

-2-

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

**B.     ALJ's Decision**

The ALJ found that plaintiff has not engaged in substantial gainful activity since the application date. (Tr. 18). The ALJ further found that plaintiff's bipolar disorder, depressive disorder, alcohol dependence, history of ADHD, hypertension, atrial flutter status post ablation, and alcoholic hepatitis were severe impairments. (Tr. 18-19). The ALJ then considered whether plaintiff's impairments met the severity of the listed impairments. (Tr. 19-21). Explicitly considering listings 4.00, 5.05, 12.02, 12.04, and 12.09, the ALJ concluded that plaintiff's impairments did not meet the requirements of the listings. (Tr. 19-21).

The ALJ next found that plaintiff had the residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently, sit 6 of 8 hours and stand/walk 6 of 8 hours. The ALJ further found that plaintiff had additional non-exertional limitations: that "[s]econdary to mental limitations, the claimant is able to understand, remember, and carry out simple instructions; sustain attention for simple tasks for 2 hour segments over an 8 hour day; and adapt to changes as needed for simple, routine, repetitive type tasks, involving occasional contact with coworkers, supervisors, and the public." (Tr. 21).

The ALJ considered plaintiff's testimony regarding his alleged limitations and his daily activities. (Tr. 21-22). The ALJ discussed plaintiff's concerns regarding his ability to stay focused and sit still, take direction, and his problems with the highs and lows of depression. The ALJ explained that plaintiff testified that "he drives, walks his dog, attends his own appointments, and does general housework, although he sometimes has problems with correctly doing the laundry and shopping" and volunteers as a mentor at Central New York Services (Tr. 26, 22). The ALJ noted that despite plaintiff's allegations regarding not having hobbies, having trouble reading and following stories on television, he told Dr. Barry that his hobbies included gardening, reading, riding his bike, and watching sports on television. The ALJ stated that plaintiff worked, both shoveling snow and as a bartender, after his alleged onset date in 2005.

The ALJ then discussed, in great detail, the objective medical evidence, including the records from a hospitalization in 2007, a biopsychosocial assessment at Central New York Services, a hospitalization in 2009, and treatment records from Dr. Forman, Dr. Lamanna's office, Dr. Zebrowski, Dr. Bhatta, a consultative exam from Dr. Barry, and an opinion from state agency consultant Dr. Harding. (Tr. 22-28). The ALJ found Dr. Zebrowski to be a treating source, but noted that "opinions as to disability that are not well-supported are not entitled to controlling weight." (Tr. 27). The ALJ went on to conclude that Dr. Zebrowski's September 3, 2010 medical source statement was internally inconsistent and inconsistent with the overall record, and therefore gave the opinion "little weight." The ALJ afforded Dr. Barry's opinion "some weight," finding it to be consistent with her evaluation of plaintiff. Similarly, the ALJ afforded Dr. Harding's opinion "some weight" noting that he "was able to evaluate all of the claimant's psychiatric treatment records except Dr. Zebrowski's medical source statement, and the opinions

are consistent with the claimant's treatment records . . . ." (Tr. 27).

Next the ALJ found that plaintiff is unable to perform any past relevant work, but, after considering the testimony of a vocational expert, that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. The ALJ therefore concluded that plaintiff was not disabled.

**C.     Issues In Contention**

Plaintiff argues that: (1) the ALJ erred by failing to properly develop the record; (2) the ALJ's RFC determination is not supported by substantial evidence; (3) the ALJ's credibility assessment is unsupported by substantial evidence; and (4) the ALJ's Step 5 determination is unsupported by substantial evidence.

**1.     Failure to Develop the Record**

Plaintiff argues that because he treated with Dr. Lamanna from August 2009 through August 2010 for, *inter alia*, cyst and pseudocyst of the pancreas and atrial fibrilation, the ALJ should have contacted Dr. Lamanna for an opinion regarding his physical limitations. (Pl. Br. at 12).

It is true that an ALJ has an affirmative duty to develop the record. *See, e.g., Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). However, an ALJ is not required to seek additional information "where there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history.'" *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *see also, Aldrich v. Astrue*, 5:08-CV-402, 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009) (a treating physician is recontacted only in situations where the evidence from treating or other medical sources is insufficient for the ALJ to determine whether a claimant is disabled).

Here, the record contains treatment notes from plaintiff's visits at Dr. Lamanna's office.[1] These notes, and the other evidence in the record do not suggest that plaintiff had physical limitations beyond those incorporated into the ALJ's RFC determination. For example, in many notes of plaintiff's visits at Dr. Lamanna's office, his general health was stated as excellent, there was no apparent discomfort, he was able to sit and stand comfortably, and his range of motion and strength tests were all normal. (*See, e.g.,* Tr. 451-52, 456-57, 481-83, 484-86, 439-41). Further demonstrating that plaintiff did not have physical limitations beyond those incorporated into the RFC determination, plaintiff testified that he was able to drive, walk his dog, attend appointments, and do general housework, although he sometimes had problems with laundry and shopping. (Tr. 49-50, 55). Plaintiff testified that he shoveled snow the previous winter, and worked as a bartender after his alleged onset date. (Tr. 41-42, 55-56, 58-61). Moreover, the Court notes that the ALJ limited plaintiff to medium work based on his representations regarding what his doctors told him. (Tr. 26). There is nothing in the record to suggest that greater limitations were necessary.

### 2. RFC Determination

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."

---

[1] The Court observes that plaintiff was treated by individuals other than Dr. Lamanna at the majority of these visits.

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citation omitted). In determining RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. § 404.1545(a).

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because she failed to properly apply the treating physician rule and improperly weighed the opinion of state agency review psychologist Harding. (Pl. Br. at 12-19). Although plaintiff contends that Dr. Zebrowski's opinion is supported by her treatment and by the record as a whole, the Court disagrees. Similarly, the Court does not agree that the ALJ erred by affording "some weight" to the opinion of Dr. Harding.

### a. Dr. Zebrowski

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity" explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts) (citing *Halloran*).

When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the

examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. See 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The ALJ must properly analyze the reasons that the report of the treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

In her September 3, 2010 assessment, Dr. Zebrowski opined that plaintiff had no useful ability to function in the following areas: ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress, be aware of normal hazards and take appropriate precautions. She found that he would be unable to meet competitive standards in the following areas: maintaining regular attendance and being punctual within customary, usually strict tolerances, working in coordination with or proximity to others without being unduly distracted, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and responding appropriately to changes in a routine work setting. She further found that he was seriously limited in remembering work like procedures, maintaining attention for a two hour segment, sustaining an ordinary routine without special supervision, making simple work related decisions, and asking simple questions or requesting assistance. Additionally, Dr. Zebrowski opined that he was seriously limited with regard to interacting appropriately with the general public, maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness and using public transportation. Dr. Zebrowski explained that she found these limitations because plaintiff's cognitive limitations and

impulsivity make him an unintentionally dangerous individual in a work place. She concluded, then, that he "is unable to attain or maintain any meaningful employment, he should be disabled for life." (Tr. 403-05).

As an initial matter, defendant correctly states that responsibility for making the determination that a claimant is disabled rests with the Commissioner, therefore, Dr. Zebrowski's ultimate conclusion is not determinative. Additionally, the Court finds that the ALJ properly analyzed the record and concluded that Dr. Zebrowski's opinion was inconsistent with the remaining evidence.

For example, although Dr. Zebrowski found that plaintiff would be unable to meet competitive standards with respect to getting along with co-workers or peers, there are notes in the record indicate that he "has a lot of friends," "has good people skills," his overall behavior was appropriate, he was missed when he was not at group therapy, and he was observed to be "a very pleasant man who is completely comfortable, in good spirits [and] cooperative." (Tr. 349, 451-52, 362, 423-24)). These findings in the record also contradict Dr. Zebrowski's opinion that he is seriously limited in interacting appropriately with the general public, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. Indeed, at his consultative exam, he exhibited good hygiene and grooming, and he stated that he was able to dress, bathe, and groom himself. (Tr. 373-77). Although she found plaintiff is unable to meet competitive standards in maintaining regular attendance and being punctual, he is able to attend his medical appointments without issue. Similarly, although Dr. Zebrowski finds that he is seriously limited in sustaining an ordinary routine without special supervision, the record demonstrates that plaintiff follows a routine daily, and does not appear to have special supervision

-9-

to do so.

Dr. Barry performed a consultative examination on October 20, 2009. During this exam, plaintiff was appropriately dressed and exhibited appropriate eye contact. (Tr. 34-75). He was coherent and exhibited a goal-directed thought process with no evidence of hallucinations, delusions, or paranoia. (Tr. 375). He was fully oriented, had intact attention and concentration, his recent and remote memory were intact, and his intellectual functioning was estimated to be in the average range. (Tr. 375). He further reported being able to perform personal care, light cooking, cleaning and laundry, and that he enjoyed hobbies such as reading, gardening, bike riding, and watching sports on television. Based on this examination, Dr. Barry concluded that plaintiff was "able to follow and understand simple directions and instructions" and "maintain his attention and concentration. (Tr. 376).

Moreover, Dr. Zebrowski seems to base her conclusions on the statement that he would be an unintentionally dangerous individual in the workplace. When asked about this at the hearing, plaintiff replied "I don't remember telling her anything about, 'I'm dangerous.' Maybe in my past I was dangerous to myself. That's why I went in the, like, the programs to begin with. But I don't feel like I'm suicidal now." (Tr. 56). As with her other findings, this statement by Dr. Zebrwoski is not supported by any other evidence in the record. The Court concludes that the ALJ appropriately evaluated the evidence in accordance with the regulations, and properly gave Dr. Zebrowski's medical source statement "little weight."

### b. Dr. Harding

Plaintiff takes issue with the fact that the ALJ afforded "some weight" to Dr. Harding's assessment because he did not have Dr. Zebrowski's assessment at the time.

Dr. Harding found that plaintiff was "not significantly limited' or "moderately limited" in all areas on his assessment form. He then concluded that plaintiff "retain[ed] the ability to perform sustained work activity in a competitive work environment." When evaluating this opinion, the ALJ noted that he "was able to evaluate all of the claimant's psychiatric treatment records except Dr. Zebrowski's medical source statement." The ALJ then found that Dr. Harding's opinions are consistent with the other evidence in the record. As explained above, the ALJ properly evaluated the medical evidence with respect to plaintiff's limitations, and gave the assessment from Dr. Zebrowski that Dr. Harding did not have access to little weight. Therefore, the Court finds that the ALJ did not err by affording this opinion "some weight."

### 3. Credibility

Plaintiff also contends that the ALJ's credibility determination is unsupported by substantial evidence. (Pl. Br. at 19-22).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and his own activities during the relevant period. *Howe-Andres v. Astrue*, No. CV-05-4539, 2007 WL 1839891, at *10 (E.D.N.Y. June 27, 2007).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on

a two step analysis of pertinent evidence in the record. See 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998). First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id*. § 404.1529(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id*. § 404.1529(c)(3).

The ALJ appropriately considered these factors in assessing plaintiff's credibility. With respect to his daily activities, plaintiff argues that plaintiff need not be an invalid to be found disabled. While this may be true, the ALJ did not find that he did. Instead, the ALJ properly considered plaintiff's daily activities and found that they supported a conclusion that he could perform medium work as described by the RFC determination. Plaintiff testified that he was able to drive, walk his dog, attend appointments, and do general housework, though he sometimes had

problems with laundry and shopping. He enjoyed gardening, reading, riding his bike, and watching sports on television. (Tr. 375). He was able to work shoveling snow the previous winter. The Court further notes that at a number of appointments, plaintiff stated that he was feeling great.

With respect to plaintiff's contention that he should not be faulted for failing to seek treatment between the alleged onset date in 2005 and 2009 except for one hospitalization in 2007 based on observations during that visit that he was anxious and his mood and affect were somewhat fearful and the fact that he has bipolar disorder and a history of ADHD, the Court disagrees. As defendant states, plaintiff had no delusions. Moreover, numerous records indicate that plaintiff was alert and oriented, able to communicate in an age appropriate way, and cooperative with appropriate behavior. (*See, e.g.*, Tr. 344-45, 451-52, 423-24, 408, 439-41). Additionally, his insight and judgment were found to be within normal limits.[2] (Tr. 364-66). Therefore, the cases cited by plaintiff suggesting that an individual with a mental impairment should not be faulted for failing to seek treatment are distinguishable. Additionally, the Court agrees with defendant that the ALJ appropriately discussed the conflicting evidence–that plaintiff testified to having problems around others, and the evidence in the record demonstrating plaintiff's ability to make friends and be around others in evaluating his credibility.

The ALJ's credibility findings were supported by substantial evidence.

### 4. Step 5 Determination

Finally, plaintiff argues that as a result of the foregoing alleged errors, the vocational

---

[2] Consultative examiner, Dr. Barry, found his insight and judgment to be "fair." (Tr. 373-77).

expert relied on an incomplete hypothetical, and therefore, the ALJ's Step 5 determination is unsupported by substantial evidence. (Tr. 22-23).

In light of the Court's conclusions above, the vocational expert did not rely on an incomplete hypothetical and therefore, the Court finds that the Step 5 determination is supported by substantial evidence.

## CONCLUSION

For these reasons, it is therefore

ORDERED that the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is GRANTED; and it is further

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is DENIED; and it is further

ORDERED that the Clerk of Court is directed to enter judgment for the Commissioner.

IT IS SO ORDERED.

Dated: Syracuse, New York
December 30, 2015

Norman A. Mordue
Senior U.S. District Judge